May it please the Court, I'm Mark Zilversmith for Dr. Baras. I'd like to reserve three minutes for rebuttal. And I'd like to focus today on the issue of the exclusion of evidence of the payments and the jury misconduct issue. The trial court clearly erred here by excluding the evidence of the payments, which supported Dr. Baras's defense that his failure to pay the taxes was due to his mental illness and the medications he was taking for his sickness. It was a serious medical illness, polymyalgia rheumatica, which coincided exactly with the criminal charges in this case. The government does not now dispute that that evidence was relevant to Dr. Victor's opinion that the conduct in this case was due to the medications and the mental illness, and that the court erroneously excluded it on a timeliness issue. The government also does not dispute that the court erred in disparately treating post-arrest, post-filing conduct by Dr. Baras in admitting the 404B evidence of post-filing conduct, which the government said proved his guilty intent, but in excluding post-filing conduct. You're talking about the amended returns? The amended returns and the 2004 returns. The government hammered Dr. Baras, saying he never filed an amended return for 2004, therefore that's consistent with his ongoing criminal scheme. And with the amended returns that he did file, they say those were not exculpatory, because he was still continuing to hide coin sales evidence. So the government itself spent a substantial time proving Dr. Baras's post-filing intent and arguing it was quite relevant to his intent as charged in the crime, but then went around and said, you can't use the exculpatory evidence of your post-filing conduct to prove that you were not guilty. So this was a clear case of the disparate treatment that the court found objectionable and reversed in waters. It was also admissible as a complete statement rule. The government and the defense agreed to admit the amended returns, but the government insisted on excluding the exculpatory evidence in those amended returns, which was the payments. We have case law that says that subsequent payment shouldn't be admitted. Well, I would argue that the out-of-circuit authority. Not just out-of-circuit. It's not. Pang isn't. No, no. I understand. Pang is this Court's case. And I would argue the out-of-circuit authority is more persuasive, but I understand that. I understand. Follow Pang. I understand that. And it's very distinguishable in this case because the court in this case, the government is not disputing that it's admissible as part of the doctor's expert opinion. And more importantly, in this case, the government itself admitted post-filing evidence to prove guilty intent and conceded, therefore, that the post-filing actions were relevant in this case. So once the government concedes and moves to admit post-filing intent evidence, then that takes us outside of Pang. I've got to say, I don't really understand how paying taxes after your nonpayment has been detected and actions being taken against you provides much exonerating evidence. I mean, there's lots of other ways in which he behaved that could be pointed to. And I presume there was evidence submitted that his behavior on other fronts changed. Why isn't it sufficient to make your case that way? Why is it the fact that he's been caught not paying taxes? So, oops, sorry, I'll pay the taxes. How does that exonerate him? Because, as Dr. Victor explained, this is a period that has coincided exactly with a serious medical illness treated by psychiatrists. And during that time, he behaved in lots of other ways, including depositing some of the checks. Why can't the defense rest upon other behavior? Why does it have to turn on, oh, I've been caught not paying taxes, I'll pay taxes for where I've been caught? I just don't understand how that's a compelling defense. It is compelling because what we wanted to show was both before and after this period of mental illness, medication, and his serious illness, he was acting as a law-abiding person, which he had tried to do. But why not show that in other respects? Why is it turned entirely upon the activity for which he's been criminally charged? Because the government made his post-filing conduct relevant by saying he's not taking care of his obligations, he's not amending his returns. Where he hasn't been caught and charged, he's not changing his behavior. That sounds to me like a pretty compelling argument. I don't understand how his change of behavior where he has been caught and charged exonerates him. Because what he's showing is that this was period, was an aberrant period due to the medical problems. And what about his other behavior during those years? Isn't there anything else he could point to? Well, he pointed to a lot. I mean, look at the condition of his house. But then the government gets up there and says, well, his house is still a mess. And it gets up there and it makes this post-filing payments relevant because he says he hasn't paid for it. Well, the reason he hasn't paid for it is because he paid $850,000. He offered proof with regard to his financial condition. Because as I look at it, he collected millions. And the fact that he had to pay some of it belatedly to the taxman doesn't say that he's a pauper and couldn't afford to make repairs. Yes, because the $850,000 exceeded his post-taxes income for that period. But what about all the money he accumulated during the time he didn't pay taxes on? That's he paid taxes plus interest. So you're telling me that somebody who's collecting literally millions of dollars over a period of years is a pauper because he has to pay interest on the taxes that went unpaid for years. I don't understand that, how that's logical. And I'm waiting to find out if you made an offer of proof with regard to his financial condition broadly. Yes, we did. We did. So why do you need to talk about payment of taxes? His financial condition broadly would have reflected that outgo. What he had left would have been what he had available to him. Well, let me ask you this, Your Honor. Why does the government get to say to the jury, why is his house still a mess in 2014? And that's the question we very, very, very much wanted to answer and asked the judge repeatedly to answer. And the answer is because he spent that money. I don't understand that answer. What did he spend the money on? He spent it on repaying the state and federal government $850,000. That doesn't do it. Because the extra amount he had to pay for interest can't explain what happened to all the money that came in during those years. It just can't. Counsel, I take it what you're trying to argue here, if I can get to the point, is that if someone walks out of a store during the holidays and the alarm goes off, if they run out of the store, that's evidence of guilt. If they go back in and say, oh, my gosh, I forgot to pay for this thing, that would be evidence that they're not guilty and it was a mistake. That's exactly right. That's your argument. Okay. I think the issue that we have with that argument, I may happen to think that's right. But there's some Ninth Circuit case law that kind of gets in the way. So you do have some remaining time. Do you want to talk about the juror question? I know you mentioned that. We're less than half your time now. Yes, I do want to talk about that. And the answer to your question briefly is that the government made it relevant by hammering the doctor on his post-filing intent. And if the government can do it, it's improper to prevent the defense from doing it. But we also have the issue of the jury misconduct. In this case, the juror reached out to the U.S. attorney, in this case his colleague, Mr. Waldinger, and says, please help me. I need coaching through my jury service. The juror texted that to the U.S. attorney's wife and emailed to the U.S. attorney's wife, which was forwarded to him, spent considerable time talking to the jury, to the U.S. attorney's wife, and spent considerable time talking to her husband about the case. And in each case, these were extraneous contacts in clear violation of the law. Can you talk about the evidence? Yes. She talked to her husband and said, this is a case with a medical defense, and the husband gave her specific advice on how to decide it, which, under the Seahawk Food case, is presumptively prejudicial. What was the advice? The advice was to listen to both sides and make up your decision at the end, which is not. How is that advice on how to decide? It is. Well, Your Honor. Is that exactly what the judge is going to instruct the jury to do? In some ways, yes, but in some ways, no. Because the defense has no burden to present anybody. And what the juror said, even excluding whether this affected her deliberations, she said, I made one particular observation. It's that the defense didn't call, nobody called the defendant's doctor. Well, as we know from the record, the doctor was uncooperative, and actually the U.S. attorney had him under subpoena, and the U.S. attorney decided not to call him. But the judge, Juror Cohen, laid that at the feet of the defense for not calling the defendant's doctor when he was equally opposed to discussing the case with either of them. Counsel, I just want to confirm the timeline, which is what I'm the most concerned about, is the timeline of how this all went down. My understanding of the record is that you were notified of this on May 6, 2014. Is that correct? I don't have the exact date, but that's approximately correct. And then you filed the motion for a new trial just a few days later. Yes. Prior to receiving that letter from the assistant United States attorney, had there been any prior notification to you of this juror contact? No, none whatsoever. Not a phone call, not an e-mail? I just want to make sure I have the timeline correct. No, neither the juror nor the U.S. attorney reported this to the court or to anybody else, especially not me. And I've read through the transcript. Is there any explanation why? It seems there's two notifications here. First, there's the train ride where Waldinger sees the AUSA and they start talking about it. And that was, I believe, in March. Right. Were you ever provided an explanation why it took from March to May for you to be notified about this juror contact? Yes. What they proffered at the hearing was that they wanted to get the voir dire transcript and look through it and then look to see if there was something that they needed to disclose. And they spent two months doing that. Okay. I'll ask them about that explanation. But other than that, the fact that the identity of the juror, allowing your defense investigators to interview the juror, any explanation to why you wouldn't have been given that? That's the only explanation. And, of course, with time, memories fade. And Juror Cohen was somewhat evasive and claimed a lack of memory at the hearing. And we were not allowed to further probe her lack of memory or question her at all at the hearing. It was a very truncated hearing many months after the facts in this case. And that was completely attributable to the U.S. attorney not disclosing this right away and the U.S. attorney not disclosing it after the train ride. I see I have about three minutes left. That's fine. You can save it. Thank you. Good morning. May it please the Court. My name is Douglas Wilson on behalf of the United States. On the question of the admission of evidence of repayment, the district court did not abuse its discretion. It had a decision from this Court from 2004 that specifically says that the evidence is irrelevant. That decision, pang, that decision relied on a prior decision from this Court and a decision from the Supreme Court, both of which say that that evidence of repayment of taxes is not relevant. Let me ask you about that, counsel. I hope I'm pronouncing this right. Sansone? Sansone, Sansone. That case, I'll call it. Really, the issue in that case, wasn't it, that the taxpayer knew that he had taxes due and owing in 1957, but delayed reporting it to another year and he thought he would kind of make it up at the end, kind of like the embezzler who steals the money but was always going to put it back? The facts are a little different in that case, but the Supreme Court specifically said that evidence of repayment is not, is no defense to a tax evasion prosecution. And I think the reason for that is that taxes are different. Not paying your taxes is different. And offering to pay, as Judge Clifton pointed out, offering to pay after you have been confronted with your failure to pay is not a defense to the failure to pay. But if your defense is lack of intent, doesn't that make this case a little different from those? It's a little bit different, isn't it? Well, the defense in every, in all three of these cases, in Pang and Ross and Sansone, is willfulness, is lack of willfulness. And so lack of intent, lack of willfulness, I believe, are the same thing. And the Supreme Court and this Court have said it's irrelevant. Irrelevant to me. But he tried to tie this to his mental, I mean, to his medical condition. That was his whole thing. Yes, Your Honor. I can address quickly. I believe it's harmless as to that, in that his argument is I was taking drugs, I was sick, I was injured, I had this medical condition. I'm a walking pharmacy. I'm a walking pharmacy, and therefore, I could not form the willfulness necessary to evade my taxes. The evidence of repayment is a small, if it's even relevant to that, it's only vaguely relevant to that. And I should, I would note that the defendant was allowed to introduce amended returns. So he showed the same thing he would have shown through repayment. He showed. Who offered the amended returns? The government or? It was stipulated, Your Honor. Stipulated, too. So both sides agreed that it could be, the amended returns could be admitted. That's correct, Your Honor. And just to briefly address the defendant's argument that the government opened the door, the government never said that the defendant couldn't say I couldn't afford to pay, I couldn't afford to pay for the, I'm sorry, to pay for the repairs to my house. In a sidebar before the cross-examination, which somehow didn't make it into the excerpts of the record, but it's at page 848 of the transcript, the prosecutor specifically said if he wants to, if the defendant's counsel wants to ask the defendant, could you afford it, could you afford to pay for the repairs to your house, you can do that. You just can't ask whether you made, whether you paid the IRS for the back taxes. So there was no evidence, there was no bar on the defendant saying, testifying that he could not afford the repairs to the house. Was there any offer of proof or proffer or attempt to prove the defendant's financial condition at the time? I don't believe so. I think, to the contrary, the prosecutor only asked the defendant about his 2012 tax returns in which he declared that he made a million dollars, and he did not ask him about his failure to pay the taxes or his financial condition during the 2005 to 2009 period. I just want to add that I don't think that the district, if this evidence is minimally relevant, the district court did not abuse its discretion in finding that it was excludable under Rule 403. So even if there is an exception to Pang, even if Pang can be distinguished, the government's position is that the district court properly excluded it under Rule 403. On the question of juror misconduct, again, I don't believe the district court abused its discretion, and that is the relevant standard. The district court conducted a thorough hearing. It heard testimony from AUSA Waldinger, AUSA Waldinger's wife, Danielle Svetkov, and the juror, Amy Cohen. And after doing that, it determined that there was no prejudice. I don't believe that the district court abused its discretion in doing so. To address Judge Owen's question, the juror, the AUSA Waldinger did tell, he did make it known to the trial team in late March that he had received this call. He testified at the hearing that he had not done so before then because he thought there was no contact and therefore did not have to report it. Whether he was correct in that is not really before this Court. The question is whether the defendant was prejudiced by the conduct, but the AUSA did not report it to the trial team until late March. At that point, the trial team ordered the transcript, waited until it had the transcript, which took a few weeks, and then wrote the letter to the defense counsel. All right. So a couple questions here. I mean, I think what Mr. Waldinger did, I have to tell you, I was in AUSA for a long time, and it baffles me that this would not be immediately reported to the district court, that a juror in a case before your office is contacting the wife and saying the things she did. I mean, I hope the office has gotten the message clear that if anything remotely like this happens again, you don't wait until the train ride until you bump into the line at AUSA and start talking about it. But getting past that, the trial team knew about the contact in March, late March. I do not understand why they did not notify the defense immediately about this so the defense can do its own investigation into what happened. Why do you guys get to just control this information and decide when he gets to know about it when it's your prosecutor talking with a juror on a sitting trial? Your Honor, the only record evidence on this is that Mr. Pittman, the AUSA on the case who said that he ordered the transcript first. So he waited about five to six weeks before telling defense counsel. I mean, should we, I hate to say this, but should we have a prophylactic rule in the circuit that says if you don't immediately tell the defense that a person in your office or the wife of someone in your office is speaking with a juror during a jury trial, absent immediate notification of the defense, it's a retrial? Why shouldn't we have that rule? Well, Your Honor, I believe that the court has, there's been a lot of cases in this circuit about contacts between jurors and other people, and the court has never announced a prophylactic rule. Instead, the court has looked to prejudice, whether the defendant has been prejudiced by. How can we determine prejudice when the hearing didn't take place until, what is it, I'm looking at my timeline here, June, when the contact was in February? How can we even evaluate what really happened here? Well, I think as in many cases, Your Honor, the contact or the hearing occurs long after the trial. And often it's not, it's often true in this Court's cases that evidence of alleged juror misconduct does not come out until after trial. Well, but here it could have. That's the difference. There are many times when a juror is talking with someone at the laundromat and there's no way the parties can know and it comes out after the fact. I'm with you there. But here it's someone in the office whose wife is speaking with a juror. The reason why it was delayed was not because the parties didn't know. It was because only one of the parties knew. Well, the government, the AUSA, AUSA Waldinger testified he didn't believe there had been a contact, and that's why he didn't, he didn't tell anyone. And I agree, Your Honor. We have trained our AUSAs before that and since then that if there is any contact between a juror and a member of the trial team. Okay. So we'll talk about Mr. Waldinger for a second. But March, it's notified in March, the train ride. Again, I don't know why the prosecution is waiting for transcripts to arrive before notifying the defense. I just, I don't see what the rationale for that is. Well, I think the prosecutor was just trying to be careful, Your Honor. I think he may have made a mistake in not notifying the defense right away, but he was not acting unreasonably. He was not acting in a way that was intended to prejudice the defendant. He simply thought that the transcripts, that he should get the transcript first. And having done that, he notified the defense right away. Are you aware of any other cases in this circuit? You've mentioned a lot about juror, juror contacting people they shouldn't contact. Are you aware of any cases like this where a juror is trying to contact someone in the prosecuting office and saying the kinds of things that were said? No, I'm not, Your Honor. I'm not aware of any cases that specifically address this. But again, I think the question is, was the defendant prejudiced by the contact? And I think the district court thoroughly explored that question. And its decision that the defendant was not prejudiced is not an abuse of discretion. And do you know of any case law that says we are not allowed to presume prejudice in a situation like this where the AUSA is the one, the prosecutor's office is the one that knows about this? Well, I haven't looked for cases that say the court may not presume prejudice, but the court has always looked. In the many cases the court has had where jurors have acted outside the bounds of their job, the court has always looked whether there was actual prejudice. Sure. But here the difference is it's the prosecution is the one that's having the contact. Not the line prosecutors. It's the wife of the AUSA. But I'm trying to find case law that fit into that. I think you appreciate why this, to me, this is different than a typical juror talking to someone in a coffee shop situation. Well, I agree that it's different in the sense that the juror was talking to the wife of an AUSA. But, again, the question is the same, is was the defendant prejudiced by this? And I don't believe that, I think the district court made a very thorough inquiry into this and found that there was no prejudice. I wanted to briefly address the Rule 606 question. The defendant says that we have, that the government waived that question by not, and this refers to the juror running into the AUSA on the street and telling the AUSA that because a doctor didn't testify, that's why she voted to convict. Our position is that that is, that any consideration by this court or by the district court is barred by Rule 606. That Rule 606 was raised by the government in a pleading. It's docket number 200, page 10, which is also not in the excerpts of the record because I did not know, we did not know it was going to be raised. But the government did rely on Rule 606. So it has not been waived by the government. And I think it clearly, in my view, what the juror told the AUSA after the trial falls clearly within Rule 606. If the Court has no further questions, I'll submit. Thank you. Thank you. Just briefly, Your Honors. Testimony about my client's financial condition by itself without the payments would not be the same and would not be the same purpose. Because it would leave the jury with the impression that he spent all this extra money on, you know, fine wine, vacations, prostitutes, whatever, without the ability to explain that he spent it on repaying diligently the federal and state governments and on securing enough, making sure he had enough to pay penalties which have not yet been assessed, and frankly, on defense counsel. It would just not be the same as to leave the jurors with the impression that he spent all this money on at the horse track or wherever. As to the jury misconduct, there's the Rosenthal case. You can say in one sense that what's the big deal, the husband who's a lawyer said listen to both sides and make up your decision at the end. I've showed you why there's a subtle difference between the court's instructions and that statement. It's very similar to the Rosenthal case. In the Rosenthal case, the lawyer said you should follow the court's instructions or you'll get in trouble. That also seems somewhat innocuous. But in that case, the court presumed prejudice, and we were prejudiced also by the delay in reporting, and we did not get a full hearing on the issue, and part of that was due to the delay in Ms. Cohen's alleged failure of memory at the hearing. The court can issue a prophylactic rule. If the court reverses on the other issue, on the payments or on the instruction, the court can also just issue a stern warning. But those are all available to this court. If the court has any other questions, I'm happy to answer them. Thank you, Your Honors.
judges: Paez, Clifton, Owens